Mr. Geiser, you may proceed. Thank you, Your Honor, and may it please the Court. Dan Geiser for the Relator. I'd like to reserve three minutes for rebuttal. Done. Thank you. The government lacks the statutory authority to dismiss a private FDA case after declining to intervene, and that conclusion follows directly under the act's plain text, structure, purpose, and intent. The government has not met the statutory requirements in history and traditional litigation norms. Congress gave the government a binary choice up front. It shall either proceed and take over the case or decline, in which case the Relator shall have the right to conduct the action. Once the government declines, the Relator's control is exclusive, and that's how the Supreme Court described it. The government is not... Hold on, Mr. Geiser. Let's get into this a little bit and unpack it, all right? First off, would you agree that the position you're advocating is contrary to what we said last year in Chang? No, I wouldn't, Your Honor, and the reason I wouldn't is... How would you square? What I would say is that the position in Chang was an offhand remark in the factual statement of the opinion. It had no analysis at any time. It didn't grapple with any of the issues under the text of the statute, and it was... Well, you may say it's a dicta, but my question to you is that whether we should give it a lot of weight or whether you think it's a good idea. My question to you is, is the position you're taking contrary to what we said in Chang just last year? It is contrary to one sentence in Chang, and as this Court has said and the Supreme Court has said, questions that are merely lurking in the background, not decided to the Court, don't constitute binding precedent. And I think it would be pretty extraordinary to say that Chang, in a single sentence, with no analysis, in a case presenting a different issue, decided a question that caused the Seventh Circuit just a few months ago to grapple very carefully with this question that has otherwise divided the circuits. So I don't think that Chang should give this Court much pause. What I do think should give the Court pause is to follow Chang in light of the clear text of the statute. Your position is, no matter what happens after that 60-day period, no matter what information comes to light, the government's out of the box. The relators cut the wheel and the government can never take it back, even though this is being prosecuted in the name of the government. Is that right? Yes, Your Honor, but it's equivalent to just a little bit. It's not just 60 days. The government can seek ample extensions at the outset. Congress designed the statute to put the decision to the government at the beginning. But assume the government didn't do that, that they thought, oh, this is going to be all right. And then a bombshell emerges that shows this case absolutely should not proceed. Your position is, well, that's just too bad. You know, the government missed its chance. We got it. We're running with it. Which is exactly how this act works. Mr. Geiser, doesn't the statute also enable the government to seek to intervene later in the process? It does, Your Honor. And so the government can participate. And I think that alleviates some of Judge Jordan's concerns, but what it can't do is intervene in a way that limits the status or rights of the person initiating the action. And we know just two sentences up. So if we were to remand this to Judge Baleson, the instructions would be clear that the government could then seek to intervene and then renew its position to dismiss. Is that your understanding of the statute? Yes and no, Your Honor. The government can seek to intervene and they can participate, but in a secondary capacity. Congress made absolutely clear that the right to conduct the action, if that's what the relater wants, the government declines to intervene. It's the plain text. So your position is even if the government seeks to intervene, they can never ask to dismiss again. Because the relater's got the lead. The relater is in the lead. They have the right to conduct the action. Now, again, that's. Mr. Geiser, how do you square that? The statute says without limiting the status, so the relater gets to stay a party, and rights of the person initiating the action, the rights of the party are explicitly set forth above. And they're subject to subsection two. So you get a notice and a hearing, but why doesn't the statute expressly provide that those rights that remain include the right of the government to dismiss, subject to notice and hearing? For multiple reasons, Your Honor. The first is it sounds like, Your Honor's question is, does the government still have the right to dismiss whether or not the government proceeds with the action? And when Congress wanted to give the government those rights, it did so in subsection C4. That's exactly the language that Congress used to set out the government's rights when they make that initial choice not to intervene. And it applies whether or not the government proceeds with the action. If C2A, the government's dismissal authority, applies irrespective of whether the government intervenes, irrespective of whether it proceeds with the action at the outset, then that introductory language in C4 is superfluous, which violates one cardinal principle of construction. And it violates a second one, too. The Supreme Court has said repeatedly, most parties cite Rossello for this, that when Congress uses specific language in one section of the statute and doesn't use it in another, it's doing it for a reason. And here that reason is clear. If you look to the structure of the statute. Hold on just a half a second. I'm sorry. Mr. Posner, could you just mute your mic, please? Because otherwise we pick up sound from you and that gets on the recording and everything. All right? Sure. He's just going to have to unmute himself. Yeah. Okay. Go ahead, Mr. Geisler. I interrupted you. Please continue. I'm sorry. I was going to say, if you look also to the structure of the act, it's very clear. Congress has a clear progression through subsection C, and it's tied to that initial choice in subsection B. When the government makes that binary election to proceed or not to proceed,  So I want to make sure that we get that. Yeah. Yeah. And Swift. The DC circuit looked at that and rejected it explicitly. Right? Swift did and the ninth circuit and 10 circuit rejected Swiss position. The seventh circuit has recently rejected the positions of both sets of circuits. So this is not a situation where this court can dodge a circuit split or we're asking the court to create a circuit split. There is a circuit split. And our contention is the, our reading actually reconciles each provision of the statute in a way that no other circuit has managed to do. And we submit it's why courts are struggling so much with this. Now. So 37, 3703 CD that C2 would only play, you know, your opponent says you're reading of that means that that section applies only if the government keeps the case. Is that, is there a criticism of your position? Accurate? The no. That C1 and C2 are linked. And you know that because they're textually linked and it makes perfectly good sense in the way the statute set out. C1 says. Action. They have primary control. The relay, the relator still participates subject to the limits and C2. And then Congress sets out those limits. And then C2 says, if the government does not proceed with the action, then the relator has the right to proceed. Now the right. I understand. I understand the structural argument you're making. I'm trying to get you to respond to the response that. Executive health has made to it, which is they say. And I know Mr. Poser will do a better job of time, but I take their position to be.  That, that can't be what Congress meant. Because then. There are rights that the government would completely lose, including under 3730 C2B to settle a case. I couldn't do it. They couldn't, they'd be out of the box completely. And the rights of the government would be in the hands of. A third party. No matter what kind of information emerged. No matter what kind of information emerged. Yes, you know, your honor. Now, now, again, to, first of all, the government, when they declined, they're not even a party to the case and this isn't a third party. The relator was assigned an interest by Congress. And they bring the suit for the person and the government. This is why the Supreme court said that the relator has independent third part article three standing. This isn't just an interloper at this point. This is a party to the case. And it's highly unusual to say that a non-party can seek to settle someone else's action. They certainly at least have to intervene. And before they can. So you, so your, your position really is that the government is not, they got nothing to do with this case. They're not a party. Heaven's to Betsy. What's the government doing stepping in here and talking to us about this. That's sort of what it sounds like. You're saying. You know, once the government, once the government declines, they just got to sit down and shut up because we got it. No, no, your honor. Now the government has every right to intervene and to participate in the case. And if they see that there's this bombshell that goes off and they, they don't think the relators doing a good job, or they think the defendant did nothing wrong. They can intervene and they can participate. They can file motions. They can take depositions. They can support. They can't dismiss and they can't settle. They can't do those things. They can't. And there's an important reason for that. Your honor. But again, look at the phrasing in C3. This is a highly textual reading that can get consistent with the purpose and history of the app. It says that the relator shall be right to conduct the action. It doesn't say a right. This is a unitary right. And the party doesn't have the right to conduct the action of someone else's control. What's your response to the constitutional concern raised by the 10th circuit right now. And that we've heard in some of the briefing that this would just, if we read it your way, it can't be constitutional. They can't comport with the take care clause. Your honor. I don't with all due respect. I don't think the take care clause is a very serious argument for multiple reasons. One is that. Just take it for the sake of discussion. We thought it was a serious argument. What's your response? I have a multiple point response. Your honor. One is that key paramount actions existed since the founding. And this is a point recognized in the Stevens case. And the Stevens case said for the same reason that these existed from the founding, there was no article three concern. And the same people who wrote article two, presumably would have noticed a problem. The long history where the government didn't even have a right to participate. The original false claims act statute, both the variance that existed at the founding and the original version in 1863. Didn't give the government the right to participate at all. So it'd be pretty strange to have a constitutional violation that's existed for centuries that no one's noticed. Justice Stevens.    The, the, the, the, the, the, the, the. The reasons in the Stevens case dissented. On and his descent that wasn't inconsistent with the majority. He just happened to reach the cake, clear cause issue and said that the long pedigree, this ancient historic practice. Itself is enough to overcome article two, but there are other reasons looking at the merits of it. And the ninth circuit in the Boeing case, I think did a nice job walking through this. If you compare this cake clause, this article two issue with Morrison versus Olson, for example. But you look to the statute as a whole and you say, does he. Still have enough control over the action. And in this case, the government has plenary authority at the outset. And Congress designed it that way. They said upfront. Take all the time you need. We'll give you extensions. The relator has to give you all the evidence they have. We created a separate investigatory demand statute. This is a 3773. That lets the government conduct all the discovery they want before they make that decision. And then once they decided to decline, then at that point, your relator takes control. The government can participate. They just can't participate in the lead. Because that's the conclusion of that process. Even at the outset is that the government can intervene. Right at the outset. That's the, that's the procedural mechanism for the government to then have its authority. And Congress then provides later that the government can also intervene later in the case. If we're talking about this, the, the, the, the. A precondition of the government's intervening. Let's assume that that sets out in the statute. Then why wouldn't that be subject as it is in the text? Whether it's under the intervention of, of one or. A three to paragraph two. For, for two reasons, your honor. The first is, if you look to C3. Congress is drawing a clear line between proceeding with the action. And then later intervening. And you know that because it can't be the case that once the government intervenes, now the government has elected to proceed with the action. That would make nonsense of section three. Look at the first sentence of C3. So Congress is drawing a distinction between the initial decision to proceed with the action and then the subsequent decision to intervene, which is different. The second. The Congress used in B5. And it appears that throughout the statute, they're using interchangeably the government's proceeding and the government. Intervening. No, well, your honor. No, I, I, I do think there is a, a market distinction here between proceeding initially with the action and later intervening. And this gets to my second point. When the government does elect to intervene after initially declining Congress said in no uncertain terms. And my very able friends on the other side have yet to explain what this language could possibly mean. They said they must do so without limiting the status and rights of the person initiating the action. It doesn't say some rights. It doesn't say preserving some subset of their rights or preserving some variant of their status, the rights at the point where the government declined is the right to conduct the action. And we don't have to guess about that. Congress said that in the first sentence of C3, that's two sentences above this language, giving the government a limited right to intervene and the Supreme court for what it's worth is reading the statute the same way that I'm reading it. And they did it again. This isn't, wasn't the decision. They reached to be absolutely clear. This wasn't the whole thing, but if you look to the court in Eisenstein, it said that the government is in a party to the action when they decline. And thereafter they're limited to, to exercising the specific rights set forth in the statute. They're limited to the specific rights. And if you look back evens, this is an exclusive right. Mr. Mr. Geiser, let me ask if, if judge Krauss or judge Restrepo, have anything else they want to pursue with you right now? I'm good. Judge Krauss. Good. Yes, I think for the moment. All right. Then we'll have you back on rebuttal. Mr. Geiser. Thank you. Mr. Posner, if you'll unmute now and we'll hear you in response or, or do we have Mr. Clark first, Mr. Clark, are you going? Okay. Then we've got, we've got you for 10 minutes, Mr. Clark, and then we'll turn to Mr. Posner. Go ahead, sir. Thank you, your honor may please the court. I'm Jeff Clark from the justice department here on behalf of the United States. These claims are the United States claims. Ultimately. It's a violation of section 3729. That's not to say that the later doesn't have a role in it. I'd refer you very quickly. To 3730 B one. Which says that a person brings a civil action for a violation of section 3729 for the person and for the United States. Yeah. No, nobody's misunderstanding that Mr. Clark. You'll you'll help us the most. Okay. So what I'm trying to say is if you will go straight to the point that they are arguing, Mr. Geisler is arguing, which is. The position the United States is taking is simply a textual. It may be, you've got a better policy argument. But that's not what Congress did. Period. If you would like go directly. And he said, you've never yet. Explained what the meaning of that textual language is. It says nothing you're going to do. It should impair the, the rights that they've acquired over the course of the, of the case. I'm paraphrasing, but you, you know what we're talking about? Yes. Judge Jordan. I think for that, I'd send you very quickly to page eight 54 of the UCB decision. From the seventh circuit, which Mr. Geisler often tries to rely on, even though that case came out against the relators. It notes that the court should not limit the relators status and rights as they are defined by C1 and C2. That's the government can not gain an advantage by intervening after the, the seal period, the relator can not get an advantage by engaging in gamesmanship to delay that. So we, we don't construe that language as giving some kind of special magical right that just turns off the text of C2A as you read it directly. And that's our main textual argument, your honor. If you, if you look at C2A with me, it says the government may dismiss the action. Again, it doesn't talk as swift emphasizes about the court dismissing the action. Is that accepting that there's a requirement of intervention for C2 to kick in? So the UCB court recently said that there's a requirement to intervene first. I think they did that largely to get past a problem of not creating a new collateral order doctrine appeal, right? Because in that case, the district court had not dismissed the case that the government's request. I don't think you have that issue here because here the district court agreed with us and did dismiss the case. So there's clearly a pellet jurisdiction and in any event, I think that the court construed a C2A motion as being a motion that would inherently come along with asking to intervene. And then the court said it would be an abuse of discretion in a circumstance like this for the district court not to grant it. So I don't think a lot really hangs on that issue, but this court in the, in the Chang decision, actually, as, as the seventh circuit opinion notes did not require a previous intervention. We think that's the better reading of the statute, but what do you make? Sorry. I'm sorry. Go ahead. If we thought there was a requirement of a motion to intervene, then, then we need to look at what the standard is and if there needs to be some showing by the government of good cause to intervene. And, and how would that, how could, how could we simply assume that along with assuming that the government government's motion to be construed as including that sort of motion and that applying the standard not yet specified that the district court would have granted it. So your honor, my first answer to that is that that's precisely what the seventh circuit does. It, you know, it looks at rule 41 to inform the analysis, but it also says that rule 41 references back to the organic statute. So if you're back to the false claims act, it's, it's, you know, it would seem to be if so facto that if the United States wants to exercise its C2 right, if you were to take the seventh circuit's position. And again, we'd urge you not to agree with that, especially in light of Chang having gone in the other direction, then you would reach the conclusion that of course there's good cause to allow the government to intervene so that it can exercise its statutory C2 right. And then the court also said, you know, theoretically, maybe we would have to remain here, but we don't really see the basis for doing that because it looks obvious that there's good cause. And we would urge you. There's arguments by Mr. Geiser that the government's reasons are protectional and putting aside the merits of that. Isn't that something that the district court ought to consider in first instance in evaluating whether there's good cause to intervene. If we think that there is that requirement. No judge cross. I don't think that the government's reasons here for dismissing were pretextual there, you know, there were concerns raised on this case early. The government closely monitored it. Relators always essentially urged the government not to dismiss cases too early, but to wait, to see how evidence comes in. The government did exactly that. And judge Baleson wrote a very careful opinion that I think is the opposite of some, you know, idea that. That's not the question that's being put to you, Mr. Clark. The question is assuming we thought that was an issue that needed to be addressed. Shouldn't that be a question that the district court does address. So your honor, let me at this point then raise the issue of waiver about this, you know, a clever, you know, attempted new approach by Mr. Geiser below the later argued essentially took the, the field of swift on the one hand, as part of the circuit split and written hour and Sequoia orange on the other as a given and said that, you know, the Sequoia orange standard should be the standard and the government hasn't met it here. That met it here. That was their argument. Now, when Mr. Geiser comes in as a pallet council, suddenly they have this new sequencing argument. And if they wanted to make an argument like that, your honor, I respectfully to, in order to avoid waiver forfeiture, they shouldn't have stand back. Judge Baleson. They should have presented that argument carefully to the district court and, and, or like, they should have argued here that perhaps the court needed to take the case on bond. We can excuse that. If it's a pure issue of law as the power to dismiss it under statute. And if it's a sufficient importance to reconcile different views on, on that law, is there any argument that there's prejudice to the government? If we were to excuse it at this stage. So your honor. Yes. I mean,  I don't think there's any prejudice in the, in the district court. And that's, you know, a cost to the government. That's a cost to the, to relate to the relator. I just think it's not ordinary or orderly appellate practice for a litigant to design a new argument. Referencing the structure of the statute and not put that before the district court first. I don't see that. Okay. Make an exception. Understood. We got your forfeiture argument. Would you, would you engage with their sequencing argument, which I take to be, there's C1 says the government can handle this if it wants. C2 follows on and there are some things that the government can do. C3 says if the government elects not to proceed, then the person who went in and invested money and risk and time they've got the ball. Now what's wrong with an analysis that looks at it in that fashion and doesn't allow the government to, to take things out of order and say, no, no, even though we elected not to proceed, we can come in anytime we want, regardless of the investment that's made by the relator and pull the rug out from under them. We don't need. And in fact, we can do without any reason at all unfettered, like you're done. Well, what is, what's the textual argument that says when, when a statute is set up in that order, you should ignore that order. So your honor, let me answer that question. First I talked about the tax and then talking about how the constitution and the take care clause arguments inform the text. So first looking at the text, as we look at the sequence of reading C1 to C2, C1 is about if the government elects to proceed, C2A and C2B are both silent on when these rights may be exercised. And we think consistent with the constitution. Why would the Congress have put C2 as C2 if what they really meant was this C3 should be C2 and then you can go and we'll make C2 into C3. Why would they put C2 ahead of C3? That's, that's what I think. And then maybe Mr. Geiser's got a different pitch and I'm missing it, but I take that to be the sequencing argument. If they had meant for those rights to occur, regardless of whether the government chose to go forward with the case, they to put it after C3, they wouldn't have put it before. Your honor, I don't think that, uh, that's the major ingredients of Mr. Geiser's argument, especially as he got through his reply brief. I think flipping over to C4, his argument using the Rosello canon is that because there's not the, the preliminary clause there, whether or not the government proceeds with the action that's present in C4, but not present in C2, he argues that therefore, that must mean that it applies only if the government proceeds with the action. That's quite. If it's not his argument, take my question on its own and answer it. Why would Congress do that? So I think, look, there's sometimes there are, we read the statute to kind of have three categories rules for when the government proceeds with the action rules for when the government doesn't and rules that apply generally. Right. And so it looks like Congress is carefully using introductory phrases to signal when they're in one of those three boxes. So C1 is. Stop for a second, because what you just said is significant. You just said it in the order that they say it should be said. You just said there's when, when the government proceeds and when the government doesn't, and then some general rule after that, that's, that is not the order of the statute. The order of the statute is when the government proceeds and then some things in the middle, right. And then when they don't proceed. So isn't your logical discussion of this exactly what Mr. Geiser is pressing on us, which is that Congress, you know, you may not like what they said, but they said what they said, and they said it in a specific order because that order has meaning. So we disagree with that. I think that it's not a requirement for Congress to start with a rule about what happens if the government proceeds and provide general rules. And then, then again, to show that the statute ping pongs, right. I think that Mr. Geiser is imagining a logic to the statute. That's not there. Look at the transition from, from three to four. So in three, you, you go to, if the government elects not to proceed. And then if you look at four, it says whether or not the government proceeds. So there is no logical order to the statute. Your honor, they're setting out a series of rules, each of which they want to be obeyed. And we would submit that on Mr. Geiser's reading, especially as informed by the take care clause and by Heckler v. Cheney as the swift case from the DC circuit noted, you have to read a C2A to mean that the government has the power to choose how to conduct its own action by dismissing it. And it's also specifically said, I think the most key phrase in this case is in C2A, notwithstanding the objections of the person initiating the action. In the context of this statute as a broader whole, and even in subsection D, Congress is using exactly the same order. If the government proceeds, here are all these things. Two, if it doesn't, and then whether or not it does. And it's maintaining that order in other subsections. So why should we, it's varying and ping-ponging just for C. In D your honor, there are four subsections. If the government proceeds is one, two is does not proceed, three is whether or not, and then four returns again to if the government does not proceed. So again, I would submit to you that there's a ping-pong in the statute. There's not a logical progression. That's an invention that Mr. Geiser has read into the statute. Well, if my colleagues will indulge me, we're well over your 10 minutes, but this is important. So we're on our time here. I would like to ask about the standard for dismissing. And you've taken the position that Swift got it right. I want to ask, is there any meaningful difference between Sequoia Orange and Swift besides the words? If all that has to be shown is a rational basis and what constitutes a money, namely that it'll cost us money. The government's, it costs the government any money to litigate or, or participate. Then it's got a rational basis for saying stop. Is that not effectively the same thing as saying unfettered? So your honor, I'd respond to that by saying that I think in the, in the mine run cases, there, there would not be a lot of daylight, particularly once you note that Swift indicates that an egregious case is right where there were fraud, where there's fraud on the court, perhaps. And you would need to have some judicial review. I think that you could argue that the two standards converge here. We certainly think that under Chang, if you apply that same approach here based on the careful, fashionable record and the fact that they're not clearly erroneous findings that judge Baleson put together, that you should affirm on that basis. Yeah, but I'm trying to, I'm trying to get at something practical and what occurs to me to be real. You said there's not much daylight. I'm trying to find out if there's any daylight at all. If the government's position is, and I take it that it is, that if we spend a nickel more, that's government, that's money out of the government fisc. And it's a rational thing for the government to say, we don't want to spend that nickel. If that's enough to say rational basis, is there any difference between rational basis review and unfettered discretion to dismiss? Your Honor, on that very practically, I think that's part of what was spotted in the seventh circuit UCB case. Mr. Geiser is doing exactly what the district court accepted and the, which the seventh circuit reversed. He's trying to take rational basis and convert it into, you know, the essential equivalent of arbitrary and capricious review under the APA, which is a lot more searching than rational basis. So the problem with the rational basis standard is that it's subject to creeping out to, you know, mission creep, to include a more searching standard of review. The reason why. Am I hearing you right, Mr. Clark, that there's no, there is no daylight there. I hear you saying, please don't, don't read anything more into rational basis. Then if we spend a nickel stock, because we can throw it out and don't let there be mission creep and don't turn this into APA review. So are you agreeing with the premise of my question that there is no real difference between rational basis review under Sequoia orange and unfettered power to dismiss under Swift? If we could be assured that things would be held at rational basis and not creep, then I would agree with you. But the problem is that the standard is susceptible to trying to be expanded, particularly because the ninth circuit didn't just say rational basis as akin to a substantive due process review. It also did use the words arbitrary and capricious. So the Swift standard is better. The seventh circuit, I think, encapsulated it well, when it says that if, you know, Congress wishes to require some extra constitutional minimum of fairness, reasonableness, or adequacy of the government's decision under 32, 37, 30 C2A, it will need to say so. And that's why the Swift standard is better. We think it's better. Practically it's better legally. It accords with heckler be Cheney. It accords with the take care clause. And for that reason, we think the district court should be affirmed on it. Isn't there a reason to have a more searching inquiry when the, if the government has decided at the outset not to intervene that as a matter of fact,  And if that happens here, the relator can then be investing large sums over years of time in, in litigation for the government simply to come in and seek to dismiss the case. Why doesn't that raise the kinds of taking arguments that you, that any chief points to, and, and at least suggest with some constitutional avoidance concerns in the background, that there should be some more searching inquiry. I mean, it's not a dismissal standard using at least a 41 A for some, some threshold for district, the district court to review that process. Yes. Judge Krause, thanks for that question. I think first of all, Mr. Geiser is not making a takings argument. There's an attempt to interject that by amicus professors. And I don't think that you should allow that amici, you know, amici to expand a case. Also, this is not, this is a highly contingent right. That's not perfected until it's perfected and the relator gets a share. And the third thing I would say to you is that there's no indication of a reliance interest analysis as part of the calculus in C2A. Instead, it specifically says that the focus should be on the government's decision to dismiss the action, notwithstanding the objections of the person initiating the action. If any objections can be disregarded under that notwithstanding clause, then surely reliance interest can be disregarded. If Congress had wanted to include reliance interests in the C2A hearing calculus, they would have put that into the statute. Well, did they put it into the statute? Mr. Clark, when they said that the government, that there's supposed to be a hearing before an article three judge, I mean, speak to the UCB court's observation that typically Congress doesn't turn us into a convening authority to offer parties coffee and donuts so that they can talk something over. Doesn't the fact that the statute includes a provision for a hearing imply that there's got to be some kind of work for the article three judge to do? They're not just there to invite people in and give them a conference room. Well, your honor, I think that it serves several purposes. You know, Swift pointed out that it provides an opportunity for the relater to make arguments to do that, you know, under the law. To what end, Mr. Clark, you gotta, you gotta connect this with your position. Your position is it doesn't make any difference what argument they make. It means it's meaningless under Swift. We get to do what we want to do. You can talk till the cows come home. It has nothing to do with what we get to do. So how do you square that with the language of the statute that says, Hey, there's supposed to be a hearing in front of an article three judge. The executive branch can be held accountable, your honor, not just by the judiciary, but by the public itself. If you're having a public hearing where a relater is arguing that a particular case should not be dismissed, it may argue that there is a fraud on the court. It may argue that there's some nefarious reason, you know, for, for a case that's being dismissed. None of that was aired on the record here, by the way. So I think these kinds of things. So it really, it really is the coffee and donuts provision. The courthouse just opens up and it lets the public see what the argument is, but that's all it does. The court has no role to play except to say I'm here. Now you guys talk. Well, you pointed to the seventh circuit, your honor, but ultimately the court concluded that most of the times the role of the court would not be significant. That's why I read the line about if there is supposed to be some standard, the court's applying Congress left it out of C2A, which is not an unimportant thing. But I would also point you to Congress, your honor, when they hold hearings, they're not necessarily hearings that result in some kind of ruling. Obviously, right. They air things for the public. They make the executive branch accountable when an oversight hearing. That's true, but we're not Congress. And we'd have article three constraints on us. We don't give advisory opinions. And it's odd to hear you suggesting that there's a new role for us, which is public convener. We're just there to sit and listen while people talk and then say nothing. It's like advisory opinion, one step beyond. You just sit there, guy in the robe, lady in the robe, say nothing because you really have no role here. That sounds like what your position is. No, I'm certainly not saying that the court could issue an advisory opinion or that there's anything contrary to article three. And as we read C2A, what I'm saying is that the court, the court could obviously ask questions. The court could, you know, urge the government to reconsider its position potentially, but that's not, you know, Congress gets to decide what the purpose of the hearing is. And if Congress had wanted the hearing to be more searching, they would have set a standard in the text of the statute. But under your position, regardless of what the arguments are that are presented to the court, they have to do with the government says that's your position. Our position is that on the circuit split, especially the original circuit split before the seven circuits, you know, take, which we read to be more on the side of swift than on the side of, of the ninth and 10 circuits that, you know, only in a very extraordinary egregious case, something like a fraud on the court with the court potentially have a role your honor. So that most of the time, and the seventh circuit recognizes this, the hearing would not be used for a purpose that is intentionally mentioned that the government's decision based on the, who the actor is in CQA, it's not the court would be the one that prevails unless some sort of, you know, over the top kind of showing to be made. And Mr. Geyser's client below didn't attempt to make any kind of showing like that. Okay. Can you speak briefly to 41a and, and the seven circuits adoption of that, that, that rule and standard. Sure. Your honor. So, you know, this goes against the issue of requiring, you know, intervention essentially we think if, if you look at the statute as being the overriding set of instructions and the, you know, the federal rules of civil procedure are not designed to alter substance. Then you look to CQA, you have the two procedural requirements of notice to the relator and then the hearing to tell. And then unless, you know, something extraordinary comes out of that, then the case should be dismissed. We don't think that applying the, the rubric of rule 41 that makes the analysis even more complicated based on the timing of when a filing, you know, to say that it should be dismissed at the behest of the government, you know, provides any profit is essentially in graphs, a whole new level of complexity on what should be a very simple analysis under the text of, of CQA. It's a very straightforward position provision. All right. Thank you very much, Mr. Clark. Appreciate your argument. We'll ask Mr. Posner to unmute and we will hear him on behalf of executive health resources. Okay. These are the challenges. You are unmuted now, Mr. Posner. You can't hear me now, your honor? Yes. My apologies, your honor. The technology died a little too advanced. All right. The way we see this is the court can do what you can't, which is, it doesn't need to figure out, which precise standard apply. This is a much easier case to change because whatever the standard the court adopts, the process here was extraordinary. Whatever the opposite of coffee and donuts is, this is what we have. If someone who participated in the process in the district court, the United States considered whether to move to dismiss for seven months. There were dozens of meetings. This is all detailed in the papers the government filed in the district court, dozens of meetings, exchanges of reports, exchanges of data. The government carefully considered whether to move to dismiss for months. Okay. Mr. Mr. Posner, let's, we'll take it as a given for purposes of our discussion with you, that there was a real process here. It was not coffee and donuts. Please speak to the position that we're getting from the relator that none of that process should have happened because the structure of the statute is such that having declined to proceed with the case, the government did not have a right to come in and, and, and seize the wheel back and dismiss. Your Honor, it's not just that there's no case to support that. And it isn't just that the meat, the taxpayers against fraud doesn't even advocate that position. And it isn't even just that it would mean the government can't settle and the take care of constitutional clauses. It isn't even just that you can't reconcile that position with Chang. Addressing squarely, the statutory question that you pose C2 is a standalone provision, like Mr. Clark said, and what the statutory structure tells us is two things that Congress did. The first thing they did is they know when to limit the government's authority, whether it's settlement, we have to stay on a reasonable list hearing you have to intervene, but it's good cause Congress knows when to limit the government's authority. Number one, number two, Congress knows when it wants in the subsection to limit it, whether it's either intervention or defamation, C2A lacks both of those things, meaning it is unlimited in whether you're intervening or declining. And unlike the other sections, there is no government starting under the plane. Those points all would make more sense. Would they not? If the, if the structure of the statute were different, I mean, speak to the structural argument, their structural argument is there's an order here and there's a logical order. And C2 follows C1 because C2 should exist and be understood to exist in an environment where the relator and the government are operating together because the government is in the case, not understood as meaning, Hey, after the government's declined to be involved, it can still come in. And from the government's perspective, even without intervening can show up and dismiss what's the what's wrong with that argument from basic logical, structural framing of the statute. Well, to begin with, language of C2, which is unlinked and unmoored to the procedural context or any limitation, but big picture, right for the parties to keep their actions. There isn't a section that says, we're only going to speak about the right when you intervene or decline. That's not in there. And C2, C2A limits C1, not the other way around. As it's clear in C1, when they're talking about such person can have the right to continue subject to the limitations below. C2 is the limiter to C1, not the other way around. C2 stands by itself in, in a section that talks about the rights of the parties to the key action. It's not the Congress, as I said, knew when to limit it, limit the authority of the government and also knew how to speak to which procedural context we were talking about. He did that in other sections. He didn't do so here, your honor. There's no reason to redraft the statute that Congress drafted to move C2 into a different place. I would say there's many statutes were in a perfect world. You could design it differently and insert it here to make it, to make it even clearer. But C2 is unlinked and clear and all the other courts, which they need to sign the brief, all the other courts have rejected that position, your honor. What I did want to emphasize, just so many participated in the district court proceedings, you know, judge Gailson. So after a seven month process with the government, where they considered everything in detail, there's no expert reports that considered everything. Judge Gailson directed questions to both parties, held a lengthy hearing, then submitted more questions to both parties. And we filed supplemental briefs. This literally opposite of coffee and donuts. Yeah. What's your position with respect to the judge's decision to issue summary judgment rulings as well? The government has told us in essence, Hey, well, they haven't briefed it. They're not touching it. Should, should we touch that or? Well, certainly the, certainly the court can and should affirm the dismissal of the entire case. It doesn't have to be the issue on which the court grades summary judgment. You can affirm just the government's dismissal of the entire case. I think the court, as the court noted, was concerned that to the extent the court of appeals had a different view about the government's dismissal motion. I think the district court wanted to issue a ruling on what we call the phase one part of the case before a two midnight regulation went into effect. So he asked certainly we thought the court should have done it and was correct to do it. I'm happy to answer any questions. The courts, the panel may have us to be aligned decision that the court made, but certainly you can affirm that. We can absolutely. You know, the, the, the government detailed, you know, enormous costs, not only that they already spent, but that they weren't going to extend in the future. This was not an eve of trial decision. We didn't have a trial date. We didn't have a trial date for phase one. We were months away the government was required to produce documents. He didn't want to produce the special master health. Sorry. You got to produce them. They were not privileged and the government was facing a long, long road in this case. Answer, answer the takings argument. If you would, Mr. Posner that there's a, there's a real chosen action here, which shows an action is a species of property. The statute gives that to the relator. This relator expended millions of dollars. The government has no right consistent with the takings clause to walk in years after the fact and say something he could have said at the jump, which is now we're not doing this, but that is fundamentally unfair and contrary to the takings clause. You're on your own. They don't have a property interest in a, in a case that, you know, there's no settlement or recovery. They haven't, they didn't have an interest after settlement, but they don't have the property interest in a case. They're just pursuing. Why not? They're not, they're not quote, just pursuing it. No, no relator does that out of an emotionary motive. They're doing it because there's a pot of gold at the end of it. And the statute is set up to give them a pot of gold. That's what Congress did it like it shook it out there in front of them. Look at this cash, look at this cash. And so they go and they spend resources and effort and time and they do it because there's a promise of money at the end of it. And that promise of money at the end of it is just as real as the promise of money that exists. It's when a person goes in and a case that doesn't have a relator factor to it, they might win, they might lose, but nobody suspects in a case where you have a promise of money at the end that that shows of action is not a thing of real value. Those things get bought and sold in the market, you know, chose as an action. So why isn't that a real species of property that they've got a right to? And the courts have described it in terms of an assignment of rights. Well, it's an assignment of rights to pursue the action. It's not an assignment. There's no guarantee at the end of the rainbow, obviously the district court here and the United States thought the case didn't have substantive merits. Number one, but think of the implications of what your honor is suggesting. That would mean that if the case develops, what the government is saying is they were unbelievably responsible here. They let the case develop. They wanted to look at both sides. They were very careful. Okay. What your honor is suggesting is I'm not suggesting anything. I'm asking you a question. What I think one of the many problems with the implication of the question is that that means that if the government finds out towards the end of the case and the money that they're related to, you know, A is totally irrelevant and B they spent a lot of money, you know, dealing with the government's requests and the process here, but that would mean that the government, if the case fell apart at the end, not only did they not pot at the end of the rainbow, the case's meritless like this one was, the government couldn't do anything because they invested a lot of money. That's not what we want here. What we, what I think the statute with the structure I think promotes in the whole and what happened in this particular case, this particular case being the opposite of the coffee and donuts shows how careful the government was. And you want the government looking at the case as it proceeds through the process and should not be blocked just because the relator has spent a lot of money. This is no, there may be, there's no guarantee. All right. Okay. Judge Krause or judge Restrepo, anything further from Mr. Posner? I'm good. I would just ask as we're thinking about any standard that the, that Congress would have imposed on for dismissal where there's a requirement, even for settlement that the court make a determination that the settlement is fair, adequate and reasonable. Why shouldn't we think of a dismissal as a settlement for $0? Why would, why should there be any lesser of a showing for something as significant as dismissal when Congress expressed that threshold for a court to approve a settlement? Well, the difference is of course that the United States has asserted the claim and there's a resolution to the claim and the relator, you know, is entitled upon a resolution to a share depending on the facts and circumstances. There are plenty of areas in the law where the government or a plaintiff is unlimited in their ability to dismiss the case. But as in the class action context, you know, if you settle the case, then there is somewhat of a searching judicial view and an approval of the settlement. So there's plenty of areas in the law that distinguish between a settlement and I'm just dropping the case where I'm complaining. And the government has, and the government here at C2A has enormous discretion to do that. That's the distinction. All right. Thank you very much, Mr. Posner. Thank you. Mr. Geiser, we've got your back and don't worry, we'll give you more than the time you reserved for rebuttal. We, we, we certainly ran quite along with Mr. Clark and Mr. Posner, but as I think everybody here would agree, this is a significant case. So we're trying to explore all the angles and I'll ask you at the jump to answer what Mr. Posner said that C2A is a limit on C1, not the other way around. You want to, would you say whatever else you want to say, but please make sure you address that. And Mr. Geiser, I think the most significant language in this statute is C2A statement that notwithstanding the objections of the person initiating the action, that is a clear statement from Congress. That the government's got unfettered discretion. Can you just hit those two things for my benefit and anything else you want, or my colleagues want to ask you about. Sure. And thank you. The time. I'll start with, with the. I guess with the last point first, so. Well, actually I'll start with your first question. C2 is not just a limit on C1. They're grouped together and they're textually linked. I mean, you can see that. And again, this goes back to the logical structure of the statute, which your honors recognize and which by the way, the seventh circuit expressly adopted. They recognize that Congress marched through the different options. And if you look and it says. I'm sorry to interrupt, but I want to make the same point you did to Mr. Posey. We're not recognizing it. We're just asking questions. We're not suggesting stuff. We're not recognizing stuff. We're just trying to put each side's arguments to the other and flesh stuff out, but, but go ahead. I understand. At the end of C1 says if, if, if the government. He wants to. He's with the actions and they have primary responsibility. The relator is still participating subject to the rights and C2. And then Congress specifies what those rights are. And then they continue with C3 and say, on the other hand, if the government elects not to proceed. And then in C4, now let's say whether or not the government proceeds. So that the structure really couldn't be any clearer. I'm trying to say that that C1 or C2 is a, is a limit or a subset of one or the other, or to look at Swift's idea. That as a type of graphic matter, as the seventh circuit put it, maybe C2 should have been embedded under C1. That doesn't take away the clear text. Okay. And then C2 says, if the government proceeds with the action and the relator is now to the side, it does not make sense that the relator is proceeding with the action. And if you look at C2C. This is saying that this specifically actually references the government prosecuting the action. And the relator in this secondary role is interfering with the government's efforts. You can then limit the relator. That only applies with the government's in the, in control. And C2B is even worse. That involves a situation where the opponent, the defendant is trying to limit the relators role. Saying the relator is effectively interfering with the prosecution of the case. There's no scenario that I'm aware of anywhere in the U S code or anywhere in American jurisprudence. It says the defendant can limit the plainest role in the case against them. But it makes sense if the government, if the government and the relator is. You cut out for just a minute there. So I'm going to ask you to repeat that set of that last point, Mr. Geiser, your, your audio slipped on us there for a second. I'm terribly sorry about that. The point I was making is that there there's no scenario under C2D. Where, where the I'm aware of an American jurisprudence where the defendant has the right to limit the plaintiff's case against them. But that provision does make sense. If the government is in charge and the relator is merely participating on the side. So if you, if you take the same principle of words are known as the company, they keep and statutory provisions are known in context. All of the rights in C2 and C2. A through D, the government is in charge and the relator is not. So the provisions of the statute, including the government's dismissal, authority, make perfectly good sense. When the government is a party to the case. And they're participating and they're in control. And the relator is not, they do not make sense. If the government is not a party to the case. This is traditionally under bedrock litigation norms. The government has absolutely no authority. And just like any other party. You have to intervene and participate. You can't just file documents in someone else's lawsuit. That's not the way that litigation works. So if they intervene, If they intervene, they, they, again, they cannot move to dismiss under the dismissal authority of C2. Now they can file any other motion they want like any other party, but they're not controlling the case. And again, the reason we know that, and again, the government does not have an adequate response for this. We still haven't heard why limiting the status and rights of the person initiating the action would mean that the government can intervene and displace the relator. Now, my friend, Mr. Clark, a very able attorney has said that what Congress was referring to with the status and rights is the status and rights in C1 and C2. If Congress wanted to say that that's exactly what they would have said. They said without limiting the rights in C1 and C2. How about, how about this, Mr. Geiser? Can, are you acknowledging that they can intervene and that they can move to dismiss? Maybe they don't have an unfettered right, but they can intervene. And then like any other party, they can move to dismiss. Would you acknowledge that? I would acknowledge that so long, but I want to be very clear in what I'm acknowledging. So I don't misstate it. Let's say, for example, this is the easiest scenario to ground it. So it makes sense. Let's say the government concludes the defendant is right. They really do think the case is meritless. It doesn't state a claim. This was the seventh circuit scenario, actually, where they thought the defendant's conduct not only was, was lawful, but was beneficial. They can intervene and they can support the defense, including filing a motion under 12 B or a summary judgment. Wait, wait, wait, wait, wait, wait. That's not answering my question. You're saying they can support a motion. I'm asking whether you would acknowledge that once they intervene, the government has the power and the right to move to dismiss in its own right. Not, not that they have stepped into the shoes of the plaintiff as, as you're saying, Oh, they cannot do that. But like any other party, who's a party to the suit, they can move to dismiss and say the suit shouldn't go forward. Exactly. Your Honor, I want to be very clear so that it's, I don't misstate what our position is. They can move to dismiss as any other party could under the rules of civil procedure, like a rule 12 motion in their own right, or rule 56 motion in their own right. What they can't do is invoke the dismissal authority of the false claims act, which is a different mechanism. That's, that's authority that Congress set out when the government proceeds with the action and they're in control. So this is not the same thing as filing the rule 41 motion where, and the rule 41 standard, by the way, to answer Judge Krause's question, we believe that would apply traditionally in this context where the government gets the case at the outset under B, they decide to proceed with the action. They don't think it's merit. They don't think it has any merit. They want to dismiss it. This is pre-answer and they can file then a motion to dismiss. But what's extraordinary here, and this shows the property interest that the relator has normally a plaintiff under rule 41 pre-answer, they just file a notice with the clerk. The judge doesn't even have to act on it. Yeah, understood, understood. But would, let's just play out this 12B6 scenario for a minute. In those circumstances, would the fact that the government is the government and that the relator purports to act in the name of the government, give the government's position some greater weight that the reviewing court, the trial court, that is the district court should, should pay attention to. In other words, it's not, it is a 12B6 motion, but it's a 12B6 motion that would recognize that the government has a specific and a particular right and interest that other parties generally don't have. I think the government may be entitled to the same deference that government filings typically have, even when participating as an amicus. But that, that comes with their expertise in effectuating and administering federal schemes. So what, and the key thing here is they can't, not just their, not just their expertise, but their right to say they're doing this in my name. This is my right as the government. This recovery is, if there is any is coming to the government and they're acting in my name. Now, maybe under the structure of the, of the act, I don't get to come in under rule 41 or reassert or take the wheel back as the plaintiff. But I have a, I have a right and interest here and it's not just anybody else's right and interest. It's the right of the government to say stop because they're doing it in my name. Is that not a legitimate position? I don't think so, Your Honor. And for, for this reason, again, this is a partial assignment of the government's claim. It's not just the government's agent. The Supreme Court made this clear in Stevens. This is why they have independent article three standing. This is an assignment of a property interest. It's now the relator has part of that claim, which is why any motion that the government can file. So you, Your Honor asked, can the government file a motion to dismiss? They can, but a motion to dismiss on the merits, they can't file a motion to dismiss under the dismissal authority of CQA simply saying, we just don't want this litigation to proceed for whatever reason that that's that they lose that right. When they declined to intervene at the outset. And to go through just again, and you're the court asked questions to my friend about the structure and you're exactly right. Why does C2 come before C3? And again, I recognize that you're not taking the position. You're asking the question, but the, but the question had an excellent premise to it, which is that Congress structured this in a very clear way. My friend, Mr. Posner says, well, CQ is a standalone provision. There's no logic to the, to the structure. And what he's effectively saying, again, is CQ applies whether or not the government proceeds with the action. That's what standalone means. But again, when Congress wanted rights to apply, whether or not the government proceeds with the action, it specified those rights in C4. It starts specifically, the initial phrase of C4 is whether or not the government proceeds with the action. So Mr. Posner is making nonsense of the statutory scheme, violating the cardinal rules. When Congress puts language like that at the beginning of C4, it doesn't want the same language to be read into C2. And C2 is textually linked to C1. C1 ends with saying, the relator can participate even though they're now not in the lead, subject to the rights in C2. Now let us tell you what those rights are. So there's a clear logic and structure to the act and Mr. Posner and Mr. Clark, you know, again, very able lawyers can't explain what those terms can possibly mean or why Congress would have structured the statute this way. And our, our position really to just underscore this, it's not as extraordinary as it sounds. As of 1994, the government didn't even think it had the right to dismiss in a decline case. And the Sequoyah Orange Court in the ninth circuit, they pointed that out in 1986 to 1996. And by the way, 1986 is when Congress amended the False Claims Act to give the government the right to intervene after declining. From that, for that decade long period, the government once tried to dismiss a declined case and you'll find this incentive. The response to that is there's a whole lot more litigation today than there ever was back then. So you would certainly expect there would be more in the way of efforts to dismiss, but be that as it may, we're, we're now an hour and 40 minutes into this argument. I think we've explored this very thoroughly. Let me, let me, let me ask whether Judge Krause or Judge Restrepo have follow-up questions they have for you. And if not, we'll just give you a moment to conclude. All right, Mr. Geiser. I have nothing else to add. Okay. Yeah. I would just like to ask, say we disagree with you, and take the approach of taxpayers that the government has to intervene before moving to dismiss, but then has that right to dismiss. If we were to take that approach, what would the consequence be for the right disposition here, given that there was a ruling on the motion to dismiss, there was also the partial summary judgment. And, and we have the approach that the seventh circuit has taken in, in making some assumptions about a motion to intervene being incorporated and addressing it at the, at the appeal stage. Sure, Your Honor. Well, first, we hope you don't reject the argument, but if you do, and this gets a little complicated. So if you'll bear with me, there were two phases of the litigation below phase one and phase two, the summary judgment ruling, the independent ruling on the merits, that only dealt with phase one. So if the court concludes that the government had to file a motion to intervene before seeking to dismiss, you know, again, disagreeing with our contention that they don't have the dismissal authority at all, the proper course would be to remand to let the district court decide in the first instance, whether there's good cause to intervene. Now, for the scope of the remand, because there is an independent summary judgment ruling on phase one, the court should address whether the court was correct in independently granting summary judgment on phase one. We would submit for the reasons in our brief. I know we're going over, I'm happy to answer any questions about it, but that the court was clearly wrong for multiple reasons to reject our phase one claims on the merits. If you agree with us there, you would remand with those claims alive with the phase two claims that weren't disposed of on summary judgment alive. And the question then would become the government's ability to intervene for stating good cause and then to support their motion to dismiss. If you affirm on the phase one claims on the merits, then the remand would only be whether the government can intervene with good cause in order to keep the phase two claims alive. So, so I'm sorry that it's a little complicated, but it's because of the disposition below is a little unusual. All right. Thanks very much, Mr. Geiser. And I'll give you, you don't have to take it, but give you just a minute. If there's something you wanted to say, instead of just in response to our questions to wrap up. Well, it's sure. And judge Jordan, I hate to put you on the spot. I think you had two questions at the outset and I want to make sure I answered both of them. You did. The second question was the, not withstanding the objections of the person, but I take your argument to be that's tied into C1 and it only makes sense in that context. So you have answered it. I take your position. I, at least I think I understand your position, but we're good. Oh, okay. I was working the court with, with, I know we're over. So I, I appreciate the opportunity for the extended rebuttal. Okay. Well, we thank all counsel in this case for a very helpful argument. We've got the matter under.